IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LORI D. BEACON, )
)
        Plaintiff, )
)
vs. ) Civil Action No. 2:13-1618
)
CAROLYN COLVIN, Acting Commissioner )
of Social Security, )
)
        Defendant. )
)

AMBROSE, Senior District Judge

**OPINION**
**and**
**ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 11 and 13). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 12 and 14). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, Defendant's Motion (Docket No. 13) is granted and Plaintiff's Motion (Docket No. 11) is denied.

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). Plaintiff applied for SSI on or about January 12, 2011. (R. 57). In her application, she alleged that since April 1, 2006, she had been disabled due to depression and anxiety; bipolar disorder; panic disorder; crying spells; panic attacks; depressive disorder; scoliosis of the low back; chronic back pain; deterioration of the

spine; claustrophobia; high blood pressure; high cholesterol; and difficulty sitting, standing, or walking for long periods. (R. 57-58). Administrative Law Judge ("ALJ") Geoffrey Casher held a hearing on February 22, 2012, at which Plaintiff was represented by counsel. (R. 24-56). Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. (R. 49-55). In a decision dated May 17, 2012, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. (R. 13-23). On September 23, 2013, the Appeals Council denied Plaintiff's request for review. (R. 1-3). Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 11 and 13). The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.

1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 416.920. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful

activity (step 5). Id.

A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.**     **WHETHER THE ALJ ERRED BY FAILING TO EVALUATE ALL OF THE MEDICAL EVIDENCE AND BY FAILING TO GIVE THE OPINIONS OF PLAINTIFF'S TREATING PHYSICIAN CONTROLLING WEIGHT**

The ALJ found that Plaintiff had severe impairments, including chronic pain, major depressive disorder, panic disorder without agoraphobia, and anxiety. (R. 15). He further found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that she was limited to standing and walking up to six hours in an eight hour work day; occasional bending, balancing, stooping, kneeling, crouching, crawling, climbing ramps and stairs; and no climbing ladders, ropes, and scaffolds. She further must avoid exposure to extreme cold, humidity, and wetness, and to dangerous conditions such as uneven heights and dangerous machinery. The RFC additionally limited Plaintiff to simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes; one-two step procedures; no work at production rate pace with no fast pace assembly line, and occasional interaction with the public, co-workers, and supervisors. (R. 18). The ALJ ultimately concluded that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled within the meaning of the Act. (R. 22-23).

Plaintiff argues the ALJ's findings are deficient because he did not evaluate all of the evidence from her treating physicians, Dr. Derek Peske and Dr. Randall Orr, and because he failed to give those medical opinions controlling weight. Pl.'s Br. [ECF No. 12] at 9-14. After

4

careful review of the record, applicable regulations, and relevant case law, I disagree.

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. Id. Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient/physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. Id. § 416.927(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." Id. § 416.927(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the

5

> treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Social Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." See 20 C.F.R. § 416.927(d)(1), (3); Dixon v. Comm'r of Social Security, 183 F. App'x 248, 251-52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Security, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008). In the present case, I find that the ALJ met this standard.

Plaintiff argues that the ALJ erred in failing to assign controlling weight to long-time treating physician Dr. Peske's opinion that, due to her chronic pain, Plaintiff would be off task fifteen percent of the workday, incapable of even low-stress work, and likely to miss more than four days of work per month. Pl.'s Br. [ECF No. 12] at 9-14 (citing R. 519-522, Ex. B9F). I disagree. The ALJ rejected Dr. Peske's opinion because it was inconsistent with the record as a whole, including Dr. Peske's own treatment records. (R. 80). In particular, the ALJ explained that Dr. Peske is a primary care physician, not a specialist; and that the clinical and objective

findings, Plaintiff's activities of daily living, and Plaintiff's medication regimen and treatment history were inconsistent with totally debilitating symptoms. (R. 21-22). These are appropriate reasons for declining to give a treating physician's opinion little weight. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); 20 C.F.R. § 416.927.[1]

Upon review of the record, I find that substantial evidence supports the ALJ's opinion in this regard. For example, contrary to Plaintiff's suggestion that the ALJ selectively and sparsely cited to Dr. Peske's extensive treatment records, the ALJ cited to those records in their entirety as evidence that Dr. Peske's treatment regimen effectively controlled her chronic pain symptoms. See R. 19-22 (citing Exs. B3F and B8F). Although the ALJ did not describe all of the over 50 entries contained in those exhibits in detail, those records support his findings that, overall, Plaintiff's pain was stable and under control. See, e.g., R. 395, 400, 401, 402, 406, 407, 410, 411-417, 419-429, 434-437, 504-506, 508-510, 515-518. Also contrary to Plaintiff's argument, the ALJ did not ignore the fact that Dr. Peske adjusted Plaintiff's medication on eight occasions in response to increased pain. Rather, the ALJ cited Plaintiff's medication history as evidence that Dr. Peske was able to adjust that medication to accommodate her chronic pain – i.e., her pain was effectively managed with medication. (R. 20-21, citing numerous Exhibits). The ALJ further correctly noted that Plaintiff did not seek or receive any treatment from a pain clinic or neurosurgeon and has not required physical therapy, a TENS unit, injection therapy, a back brace, an assistive device, or surgical intervention. (R. 21, citing Exhibits B3F, B5F, B8F, B9F).

Other record evidence on which the ALJ relied includes a March 2008 note from orthopedic surgeon Dr. Wigle that Plaintiff's scoliosis was not causing back pain (R. 397); an April 2011 report from consultative examiner Dr. Robert Davoli (Ex. B5F), and Plaintiff's self-reported

---

[1] The ALJ also noted that the ultimate conclusion as to disability is an administrative decision reserved to the Commissioner. (R. 22, citing S.S.R. 95-5p).

activities of daily living (Ex. B4E and Testimony).  See R. 18-22.  With respect to daily activities, Plaintiff testified, inter alia, that she is able to drive; splits the housework with her father; grocery shops with her father; is able to cook meals; watches movies; and does not mind being around people.  (R. 20).  Dr. Davoli examined Plaintiff and noted five degrees of very mild scoliosis in the thoracic area with "not much else seen wrong with the back."  (R. 477).  He also observed that Plaintiff was able to get on and off the examination table; walk on her heels and toes; squat and rise from a squatting position and rise from a chair.  Id.  In addition, Plaintiff's sensory examination was normal; her motor strength was 5 out of 5; her reflexes were 2 out of 4; there were no signs of atrophy; straight leg testing was negative; range of motion was normal, including her back; and her gait and neurological examination were normal.  Id.  Dr. Davoli concluded that "[a]s for her physical limitations, quite honestly I do not find any."  Id.[2]

Because the ALJ adequately explained his reasons for rejecting the opinions of Dr. Peske and identified significant examples of record evidence inconsistent with and contrary to that opinion, I find no error on this issue.

Plaintiff's suggestion that the ALJ similarly misevaluated the limitations resulting from her mental impairments is likewise without merit.  As the ALJ discusses, the treatment notes from Plaintiff's longtime mental health provider, Dr. Orr, show that Plaintiff received frequent and ongoing medication management and that her anxiety and depression were under good control. R. 20 (citing Exs. B4F and B7F).  Although Plaintiff's GAF scores fluctuated over the course of

---

[2] To the extent Plaintiff argues that the ALJ erred in failing to address all of the x-rays and other objective medical findings of record, that argument is without merit.  It is well-established that there is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record. Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  As set forth above, the ALJ cited substantial evidence in support of his findings.  He also referred repeatedly to Exhibit B3F, Dr. Peske's records, which contain many of the x-ray results to which Plaintiff cites.  (R. 19-22).  Moreover, the ALJ did not dispute that Plaintiff had the back conditions that she claimed.  Rather, he found that Plaintiff's chronic back pain was not disabling within the meaning of the Act.  None of the x-rays or other records to which Plaintiff cites on pages 13 and 14 of her brief support a finding of totally debilitating pain.

her treatment, they ranged from 65 to 55, indicating only mild to moderate difficulty in social, occupational, or school functioning.[3] See id. The ALJ further described the evidence as showing that Plaintiff has not required any inpatient mental health treatment; has not attended or been referred to a partial hospitalization program; and has not resided in a highly supportive living arrangement due to a mental health disorder. Id. In short, substantial evidence supports the ALJ's finding that Plaintiff's mental health impairments were not disabling.[4]

For all of these reasons and based on the record in this case, I find the ALJ did not err in weighing the medical opinions and other evidence. Moreover, I find that the ALJ's RFC finding is supported by substantial evidence. Therefore, remand on this issue is not warranted.

### C. WHETHER THE ALJ ERRED IN RELYING ON PLAINTIFF'S ACTIVITIES OF DAILY LIVING IN ASSESSING HER CREDIBILITY

Plaintiff argues that the ALJ erroneously relied on her activities of daily living as a basis for discrediting her allegations that she was unable to work. Pl.'s Br. [ECF No. 12] at 14-15. This argument is without merit.

It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility. See Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in

---

[3] The GAF scale is used by clinicians to report an individual's overall level of functioning. See Cainglit v. Barnhart, 85 F. App'x 71, 74-75 (10th Cir. 2003). A GAF score of 51-60 denotes "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning," and a score of 61-70 indicates "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful relationships." See DSM-IV-TR, at 34.

[4] Plaintiff's cursory suggestion on page 11 of her Brief that the ALJ erroneously failed to discuss the finding of non-examining state agency consultant Emanuel Schnepp, Ph. D. that Plaintiff had "marked" difficulties in maintaining concentration, persistence, and pace is without merit. To the contrary, the ALJ specifically cited to Dr. Schnepp's evaluation in his opinion. See R. 21 (citing Ex. B1A). Although Dr. Schnepp noted marked difficulties in maintaining concentration, persistence, and pace, he found only mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and no repeated episodes of decompensation. As the ALJ correctly stated, Dr. Schnepp ultimately opined that the "functional limitations resulting from the claimant's [mental health] impairments do not preclude her from being able to meet the basic mental demands of competitive work on a sustained basis." (R. 21, 61).

9

the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p. Ordinarily, an ALJ's credibility determination is entitled to great deference. See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003).

As the ALJ stated, he must follow a two-step process when assessing pain: first, he must determine whether there is a medical impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms; and, second, he must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limit the plaintiff's functioning. (R.18-19). Statements about pain alone, however, do not establish a disability. 20 C.F.R. § 416.929(a). Allegations of pain must be consistent with objective medical evidence and the ALJ must explain the reasons for rejecting non-medical testimony. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000).

In determining the limits on a claimant's capacity for work, the ALJ will consider the entire case record, including evidence from the treating, examining, and consulting physicians; observations from agency employees; and other factors such as the claimant's daily activities, descriptions of pain, precipitating and aggravating factors, type, dosage, effectiveness and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. § 416.929(c); S.S.R. 96-7p. The ALJ also will look at inconsistencies between the claimant's statements and the evidence presented. 20 C.F.R. § 416.929(c)(4). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible. See Burns v. Barnhart, 312 F.3d 113, 129–30 (3d Cir. 2002).

As stated above, the applicable regulations expressly state that a claimant's activities of daily living are appropriate factors to consider when evaluating subjective complaints of pain.

Although Plaintiff is correct that disability does not require that a plaintiff must "vegetate in a dark room," the ALJ correctly noted that Plaintiff's reported activities in this case – including personal care, assisting her father, household chores, driving, shopping, and outdoor work – were inconsistent with <u>totally</u> debilitating limitations. (R. 20-22). Moreover, Plaintiff's activities of daily living comprised only one of many factors that the ALJ considered in determining that Plaintiff was not fully credible. As set forth in his opinion and elsewhere herein, the ALJ also properly considered Plaintiff's medication regimen, history of treatment, clinical and objective findings, and sparse and inconsistent work history in assessing Plaintiff's credibility. (R. 22).

In short, there is no basis before me upon which to challenge the ALJ's credibility determinations, and remand is inappropriate on this issue.

### D. WHETHER THE ALJ ERRONEOUSLY REFERRED TO A MEDICAL <u>TEXT</u> <u>WITHOUT OFFERING THE TEXT INTO THE RECORD</u>

Plaintiff argues that the ALJ erroneously referred to a medical text – the American Psychiatric Diagnostic Manual of Mental Disorders (DSM-IV) – in his opinion without making the text part of the record. Pl.'s Br. [ECF No. 12] at 15-16. In support, Plaintiff cites to a provision in the Administration's internal Hearings, Appeals and Litigation Law Manual ("HALLEX") that reads as follows:

> The ALJ must not cite medical texts and medical publications as the authority for resolving any issue. If it is necessary to refer to a medical text or medical publication, the ALJ must submit the material to the claimant or the representative for review and comment, and make the material a part of the record.

HALLEX I-2-8-25(D). This argument is specious at best. As an initial matter, internal agency manuals such as the HALLEX lack the force of law and are not binding on the Social Security Administration or the courts. See Chaluisan v. Comm'r of Soc. Sec., 481 F. App'x 788, 791 (3d Cir. 2012); Bordes v. Comm'r of Soc. Sec., 235 F. App'x 853, 859 (3d Cir. 2001) (citing Schweiker

v. Hansen, 450 U.S. 785, 789 (1981)).  Moreover, and in any event, the ALJ in this case did not use the DSM-IV to "resolve any issue."   See Atwood v. Comm'r of Soc. Sec. Admin., Civil No. SAG-11-1742, 2013 WL 4501246, at *3 (D. Md. Aug. 21, 2013), aff'd, 564 F. App'x 25 (4th Cir. 2014).  Rather, he cited to the DSM-IV simply to define a phrase and explain the value of Plaintiff's GAF scores already contained in Dr. Orr's treatment notes.  (R. 20).   For these reasons, remand is inappropriate on this issue.

### III.     CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.   An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LORI D. BEACON,

        Plaintiff,

vs.

CAROLYN COLVIN, Acting Commissioner of Social Security,

        Defendant.

Civil Action No. 2:13-1618

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 3rd day of November, 2014, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant's Motion for Summary Judgment (Docket No. 13) is GRANTED, and Plaintiff's Motion for Summary Judgment (Docket No. 11) is DENIED.

        BY THE COURT:

        /s/ Donetta W. Ambrose
        Donetta W. Ambrose
        U.S. Senior District Judge